140

CITY OF MENTOR, APPELLEE, v. GIORDANO, APPELLANT.

(No. 40038—Decided March 15, 1967.)

APPEAL from the Court of Appeals for Lake County.

142

*Mr. Leo R. Collins,* prosecuting attorney, for appellee.
*Mr. John F. Norton,* for appellant.

ZIMMERMAN, J.   This case involves the alleged commission of a misdemeanor, a misdemeanor being an offense carrying a penalty less than imprisonment in the penitentiary.   Section 1.06, Revised Code.   First, defendant complains of an infringement of his constitutional rights, but we find no substantial basis for such claim.   He voluntarily accompanied the patrolman who apprehended him to the Mentor police station, and he voluntarily took the tests to which he was subjected.   No coercion, mistreatment or abuse are asserted.   Probably defendant's most insistent complaint is that he was unconstitutionally denied a jury trial.   The record shows that defendant by his counsel orally requested a jury trial on the very day of his actual trial—the date last set for such trial.

Under the Sixth Amendment to the Constitution of the United States and by Section 5, Article I of the Constitution of Ohio, trial by jury in a criminal case is guaranteed.   See, also, Section 2945.17, Revised Code.   But is such right absolute and unrestricted in all criminal cases?

In Ohio, in cases involving misdemeanors, a statute providing that, before an accused shall be entitled to a jury trial, he must demand the same, is not violative of the constitutional right of trial by jury.   *Hoffman* v. *State,* 98 Ohio St. 137, 120 N. E. 234, and *Holub* v. *State,* 127 Ohio St. 34, 186 N. E. 708. So a statute or authorized rule of court to the effect that a defendant shall not be entitled to a jury trial unless he makes demand therefor in writing within a specified time before trial is valid.   ''Such statute and rule merely regulate the method of making the demand; they do not deny a party his right to a jury trial.''   *Harry Goldberg Co.* v. *Emerman,* 125 Ohio St. 238, 181 N. E. 19, citing the *Hoffman case.*

In line with such holdings, Section 1901.24, Revised Code, states: ''Any cause in a Municipal Court, either civil or criminal, shall be tried to the court unless a jury trial is demanded in writing by a party entitled to the same.   * * * In any criminal case in which the accused desires a jury trial, a demand for a jury trial must be made by the accused or his attorney.   Such

demand must be in writing and filed with the clerk of court not less than three days prior to the date set for trial, or on or before the day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this section is a complete waiver of the right thereto." And compare Section 2938.04, Revised Code.

Although in the particular case and under the particular facts, a judgment of conviction in a Municipal Court was set aside, the Court of Appeals for Washington County in interpreting the above-quoted section in *State* v. *Edwards*, 4 Ohio App. 2d 261, 266, 208 N. E. 2d 758, 761, said "that the real meaning that the Legislature imputed in Section 1901.24 is that three days before the date set for trial means three days before the date set for the actual trial, no matter how many continuances for whatever reasons may have been had." Compare *Trattner* v. *State*, 14 Ohio App. 157, and *State* v. *Magana*, 115 Ohio App. 106, 184 N. E. 2d 525.

In the circumstances, then, the trial to the court without a jury was proper.

We come now to the basis upon which this case is being decided.

It is well established in Ohio (1) that the Supreme Court is not required to and ordinarily will not weigh evidence, but it will examine the record to determine whether the evidence produced in a trial attains that degree of probative force and certainty which the particular case demands (*State* v. *Urbaytis*, 156 Ohio St. 271, 102 N. E. 2d 248; *State* v. *Murphy*, 176 Ohio St. 385, 199 N. E. 2d 884) and (2) that penal statutes and ordinances are to be interpreted and applied strictly against the accuser and liberally in favor of the accused (*State* v. *Conley*, 147 Ohio St. 351, 71 N. E. 2d 275; 15 Ohio Jurisprudence 2d 253, 254, Section 20). Moreover, penal statutes and ordinances must be construed in the light of the mischief they are designed to combat.

Here, defendant was specifically charged with *operating* a motor vehicle on private property while under the influence of intoxicating liquor, and it was incumbent on the prosecution to establish all essential elements of that charge beyond a reasonable doubt.

Although, in the circumstances disclosed, defendant was a trespasser on the church property and probably subject to apprehension on that score, he was not charged with that offense.

There are many reported cases dealing with the subject of operating a motor vehicle while under the influence of intoxicating liquor, and they are in conflict. Some hold that the term, "operate," as used in a statute or ordinance connotes motion, and, unless the vehicle is in motion, there is no offense. Other cases hold, in particular circumstances, that "operate" may apply to a stationary vehicle, where it is plain that the operator is in a thoroughly intoxicated state and obviously has moved or intends to move the vehicle.

Cases of the latter kind frequently involve a situation where the intoxicated person is the sole occupant of the vehicle, shows a high degree of intoxication and has been involved in a collision of some kind, where the vehicle has been stopped on or off a street or highway in a precarious or abnormal position, and where the occupant is engaged in some act indicative of the fact that he is about to start the vehicle. It hardly seems necessary to cite and comment on the numerous cases covering this subject. Many of them are collected in 47 A. L. R. 2d annotation, beginning at page 570; 4 A. L. R. 2d, Later Case Service, page 1202 *et seq.*; Words and Phrases (Perm. Ed.), page 545 *et seq.*, under the word, "operated"; Erwin's Defense of Drunk Driving Cases (2 Ed.), page 4 *et seq.*, Section 1.01; 6 Ohio Jurisprudence 2d 735, Section 437.

Of course, the primary object of statutes and ordinances making "drunk driving" an offense is to protect the *users of streets and highways* from the hazard of vehicles under the management of persons who have consumed alcoholic beverages to such an extent as to appreciably impair their faculties.

Let us now examine the evidence and lack of evidence in the instant case. There was nothing to show that defendant had consumed any beverage other than beer in a moderate amount prior to the parking on the church grounds. Although he was sitting behind the steering wheel of the stationary vehicle, he was accompanied by three other persons, one of whom testified that he, and not defendant, had been driving the vehicle

prior to parking. The vehicle was apparently parked in a normal manner. There is nothing to show whether intoxicants were consumed by defendant in the vehicle after the parking or that defendant would remain behind the steering wheel when the vehicle was set in motion. Several of the physical tests given defendant by the apprehending police officer were satisfactorily performed. There is no evidence that the Breathalyzer at the police station was in proper working order or that its manipulator was qualified, other than his own bare declaration to that effect. See *State* v. *Baker*, 56 Wash. 2d 846, 355 P. 2d 806, and *Pruitt* v. *State* (Tenn.), 393 S. W. 2d 747.

Nor was there any evidence to explain what the ''.18 per cent'' reading of the Breathalyzer indicated. Under the cases last cited, the evidence relating to the Breathalyzer test was incompetent and should not have been considered.

Chronology is an important element in ''drunken driving'' cases. A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle. *State* v. *Ezoto*, 116 Ohio App. 1, 3, 186 N. E. 2d 206, 208.

*Generally, each ''drunken driving'' case is to be decided on its own particular and peculiar facts.* A majority of this court is of the opinion that in the present case, giving the defendant the advantages to which he is entitled, the competent evidence against him did not reach that high degree of probative force and certainty whereby reasonable minds could reach different conclusions as to the guilt of the accused beyond a reasonable doubt of the precise offense charged. That the arrest and conviction of defendant for the offense of intoxication alone or for trespassing, or both, might have been justified under the evidence is beside the point.

Therefore, the judgments of the Municipal Court and the Court of Appeals are reversed, and final judgment is rendered for appellant.

*Judgment reversed.*

Matthias, Herbert, Schneider and Brown, JJ., concur.

Taft, C. J., and O'Neill, J., dissent in part.

TAFT, C. J., dissenting in part. A written demand for a jury was filed by defendant on February 17 and refiled on February 23, long before the time of the trial on July 15. In my opinion, this represented compliance with the statute requiring a written demand for jury three days before the time set for trial. I realize that the trial was previously set for February 19 but there was no trial on that date.

Further, I believe that there was sufficient evidence to justify submission of the question of defendant's guilt to the trier of the facts.

For these reasons, I would reverse and remand for a jury trial.

O'NEILL, J., concurs in the foregoing dissenting opinion.