OPINION
{¶ 1} On Ocyober 25, 2001, Appellant was stopped for driving at a high rate of speed, weaving and/or changing lanes without signaling by an officer from the Pickerington Police Department. Appellant refused to perform field sobriety tests. Appellant also later refused a breathalyser test.
 {¶ 2} Appellant was cited for Speed, Marked Lanes Violation, Driving under Suspension and OMVI.
 {¶ 3} On April 18, 2002, The case proceeded to bench trial in the Fairfield County Municipal Court. Appellant claimed that he was involuntarily intoxicated. Appellant argued that he was intoxicated due to lacquer fumes to which he was exposed at work and, therefore, did not have the requisite intent to drive under the influence of alcohol or a drug of abuse. The court concluded that DUI in violation of R.C. §4511.19.(A)(1) is a strict liability offense. Appellant was convicted as charged. He was sentenced to 180 days incarceration, with 150 days suspended, a five hundred and fifty dollar ($550) fine, a one year license suspension, six points assessed against his operator's license and vehicle forfeiture.
 {¶ 4} Appellant's sentence was stayed pending appeal.
 {¶ 5} Appellant assigns the following errors:
 ASSIGNMENTS OF ERROR I. {¶ 6} "THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT'S BEING OVERCOME BY LACQUER FUMES WHILE DRIVING, CONSTITUTES OMVI AS DEFINED UNDER R.C. 4511.19(A)(1)."
 II. {¶ 7} "THE TRIAL COURT'S DECISION THAT THERE WAS SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF ALCOHOL WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."
 I. {¶ 8} In his first assignment of error, Appellant argues that he lacked the requisite mental intent to operate his vehicle while intoxicated. More specifically Appelant argues that the trial court erred in finding that he was guilty of OMVI under R.C. § 4511.19(A)(1) because his impairment was caused by inhalation of and exposure to lacquer fumes. We disagree.
 {¶ 9} Appellant was charged with a violation of R.C. §4511.19(A)(1), which states:
 {¶ 10} "(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
 {¶ 11} "(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse."
 {¶ 12} Revised Code § 3719.011 defines "drug of abuse" as any controlled substance as defined in section 3719.01 of the Revised Code, any harmful intoxicant as defined in section 2925.01 of the Revised Code, and any dangerous drug as defined in section 4729.01 of the Revised Code.
 {¶ 13} Revised Code § 2925.01 defines "harmful intoxicant" as any of the following:
 {¶ 14} "(1) Any compound, mixture, preparation, or substance the gas, fumes, or vapor of which when inhaled can induce intoxication, excitement, giddiness, irrational behavior, depression, stupefaction, paralysis, unconsciousness, asphyxiation, or other harmful physiological effects, and includes, but is not limited to, any of the following:
 {¶ 15} "(a) Any volatile organic solvent, plastic cement, model cement, fingernail polish remover, lacquer thinner, cleaning fluid, gasoline, or other preparation containing a volatile organic solvent;
 {¶ 16} "(b) Any aerosol propellant;
 {¶ 17} "(c) Any fluorocarbon refrigerant;
 {¶ 18} "(d) Any anesthetic gas.
 {¶ 19} "(2) Gamma Butyrolactone;
 {¶ 20} "(3) 1, 4 Butanediol." (Emphasis added).
 {¶ 21} Dictionary.com defines lacquer and thinner as follows:
 {¶ 22} "lac••quer: n. Any of various clear or colored synthetic coatings made by dissolving nitrocellulose or other cellulose derivatives together with plasticizers and pigments in a mixture of volatile solvents and used to impart a high gloss to surfaces. (Emphasis added).
 {¶ 23} "thin••ner: n. A liquid, such as turpentine, mixed with paint or varnish to reduce its viscosity and make it easier to apply."
 {¶ 24} Base on the above we find lacquer to be a harmful intoxicant pursuant to R.C. § 2925.01.
 {¶ 25} This Court previously addressed the issue of R.C. §4511.19(A)(1) being a strict liability offense in State v. Myers (Oct. 18, 1999) Stark App. No. 1999CA00024, unreported, wherein we held:
 {¶ 26} "The trial court correctly concluded that pursuant to R.C. 4511.19(A)(1), Driving While Intoxicated is a strict liability offense. Because that statute does not specify any degree of culpability, the question is whether it plainly indicates a purpose to impose strict criminal liability for the conduct described in the section. R.C. 2901.21(B).
 {¶ 27} "The language chosen by the legislature plainly indicates purpose to impose strict liability, because the overall design of the statute is to protect against the hazards to life, limb, and property created by drivers who have consumed so much alcohol that their faculties are impaired. State vs. Grimsley (1982), 3 Ohio App.3d 265, 267, citing Mentor
 {¶ 28} vs. Giordano (1967), 9 Ohio St.2d 140. The legislature defines the offense in terms of the factual presence of alcohol, without reference to the offender's mental state. Id. Further, the legislature created an elaborate procedure to determine the concentration by weight of alcohol in an accused's breath or blood, together with the presumption that if such concentration is .10 percent or more, the accused is under the influence of alcohol. Id."
 {¶ 29} Based on the above, we find the trial court did not err in finding that Appellant's impairment, caused by inhalation of lacquer fumes, was a violation of R.C. § 4511.19(A)(1).
 {¶ 30} Appellant's first assignment of error is denied.
 II. {¶ 31} In his second assignment of error Appellant argues that the trial court lacked sufficient evidence to support a conviction for OMVI and that such conviction was against the manifest weight of the evidence. We disagree.
 {¶ 32} In reviewing whether a conviction is against the manifest weight of the evidence, our standard of review is stated as follows: The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 33} In the case sub judice, Appellant and his employer both testified that Appellant was at work spraying lacquer from 6:00 p.m. to 9:00 p.m. on the night in question. (T. at 60, 81). Testimony was also provided to the fact that Appellant did not use a double charcoal filtered respirator as would be appropriate but instead wore only a simple paper mask. (T. at 57-60, 84-85).
 {¶ 34} Officer Smith testified that he observed Appellant driving at a high rate of speed, weaving within his lane and straddling both lanes. (T. at 4-5). Officer Smith also testified that when he stopped Appellant, Appellant's movements were lethargic and he had difficulty exiting his vehicle (T. at 8). Appellant's eyes were bloodshot and glazed over and he was unable to focus. (T. at 8, 12). Appellant was unsteady on his feet. (T. at 15, 18). Appellant had slurred speech. (T. at 12). Furthermore, Appellant fell asleep during transport to the Pickerington Police Station. (T. at 16). Once at the police station, Appellant missed the doorway and hit his shoulder on the doorjamb and almost fell. (T. at 18).
 {¶ 35} Based on the above, we find that viewing the evidence in its entirety, we are unable to find that the trial court lost its way and inflicted a manifest miscarriage of justice in finding that Appellant was under the influence of a drug of abuse.
 {¶ 36} Appellant's Second Assignment of Error is overruled
 {¶ 37} For the foregoing reasons, the judgment of the Fairfield County Municipal Court is affirmed.
By: Boggins, J. and Wise, J. concur.
Hoffman, P.J. concurs separately.
Topic: Intoxication of Laquer Fumes.